UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN CASEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23 CV 206 JMB |
| | ) |
| DEPUTY STEPHEN COOPER and SHERIFF DAVID MARSHAK, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Sheriff David Marshak's Motion to Dismiss Counts V-VIII (Doc. 41). For the reasons set forth below, the Motion is **GRANTED**.

**I.   Background**

Plaintiff Kathleen Casey's First Amended Complaint alleges claims related to an event on March 20, 2022 that resulted in injury to L.H., her son, who was a minor and suffering from a mental health crisis. Plaintiff alleges that she called 911 when L.H. began "acting out" in his bedroom and threatening self-harm. She told the dispatcher that he was having a "schizophrenic episode," that he threatened self-harm, that he had accidentally injured his sister, and that he had a butter knife that she had retrieved. Jefferson County Sheriffs deputies Stephen Cooper and Ryan Dudley responded to the scene and Casey informed them of L.H.'s mental status and that he had no weapons. They instructed all the occupants of the house, Casey, her daughter, and her daughter's fiancé, to wait outside while they entered the house. A few minutes later, they emerged from the house with L.H., who was bloodied, injured around the face and head, and handcuffed.

Page **1** of **11**

They placed him into a waiting Meramac District Ambulance, and he was transported to Mercy Hospital in St. Louis.

In Counts I-IV, Plaintiff alleges excessive force claims against Deputy Cooper. and failure to train and supervise against Sheriff Dave Marshak, in his official capacity.  In Counts V-VIII, Plaintiff alleges claims pursuant to the Americans with Disability Act, 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act, 29 U.S.C. § 794, against Sheriff Marshak, in his official capacity (i.e., against Jefferson County).  Counts V-VIII are the subject of Defendant Marshak's Motion to Dismiss.

As to these Counts, Plaintiff alleges that L.H. is disabled within the meaning of the ADA and RA, and that Jefferson County receives federal funds such that the RA applies.  Plaintiff also alleges that Deputies Cooper and Dudley knew that L.H. was disabled (or regarded him as being disabled) before arriving at the scene.  Plaintiff states that Deputy Cooper failed to accommodate L.H.'s disability by failing to deescalate the situation and by using excessive force and intentionally discriminated against him but using excessive force on account of his disabilty.  Plaintiff further alleges that Deputy Cooper "attempted to convert the effects of L.H.'s disability into the crime of domestic violence through an objectively unreasonable misperception of L.H.'s suicidal and schizophrenic state . . . ." (Doc. 39, p. 18).  Thus, Plaintiff asserts that Defendants violated the ADA and the RA during L.H.'s seizure by Defendant Cooper's "abrupt and aggressive tactics," handcuffing L.H., and by failing to allow communication between L.H. and his mental health providers.  Id. pp. 28-29.  Plaintiff seeks compensatory and punitive damages, in addition to fees and costs, in her prayer for relief.

**II.     Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56; Fed. R. Civ. P. Rule 8(a)(2). However, the principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**III.    Discussion**

Both Title II of the ADA and Section 504 of the RA contain similar language designed to prevent the exclusion of disabled persons from public services and programs. 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity."); 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability" shall "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). "The reach of this statutory language is demonstrated by the definition of 'program or activity' to include 'all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government.'" Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998) (quoting 29 U.S.C. § 794(b)). Both the ADA and RA, which are substantially similar except for the federal funding requirement, are analyzed under the same framework and are subject to interchangeable case authority. Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). To prevail on a claim under either statute, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) he was discriminated against based on his disability. Layton v. Elder, 143 F.3d 469, 472 (8th Cir.1998); Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010).

In City and County of San Francisco, Calif. v. Sheehan, 575 U.S. 600 (2015), the Supreme Court declined to determine the question of whether "the ADA applies to arrests." Id. 610. The Court also declined to address "whether a public entity can be liable for damages under Title II for an arrest made by its police officers" under a theory of vicarious liability for the "purposeful or deliberately indifferent conduct of its employees." Id. There is a split in the Circuits, and hence uncertainty, as to whether the disability statutes apply to police action prior to and during arrests and what standard should be applied. In analyzing an ADA claim related to a police encounter with a mentally ill plaintiff who absconded from a hospital, the First Circuit acknowledged that it raised issues of first impression: does Title II apply to "ad hoc police encounters" with the public

and to what extent?; can a public entity be liable for a "line employee's actions"?; and, is proof of deliberate indifference sufficient? Gray v. Cummings, 917 F.3d 1, 14-20 (1st Cir. 2019). The Court outlined competing case authority on each of these questions and assumed Title II applied to the police officer's conduct, that an employer (a town) can be vicariously liable for the defendant's actions, and that showing deliberate indifference is sufficient. Id. In Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000), the Fifth Circuit appeared more direct, stating that "we hold that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." Id. 801.[1] An implication of the holding is that Title II does apply but only when a scene is secured and/or there is no threat to life.

In a case similar to the one at bar, the Sixth Circuit stated that "[a] few opinions have indeed indicated that arrestees might be able to bring cognizable claims under Title II . . . . [However], [w]e need not decide whether Title II applies in the context of arrests . . . ." Roell v. Hamilton County, Ohio/Hamilton County Board of County Commissioners, 870 F.3d 471, 489 (6th Cir. 2017); see also, King v. Hendricks County Commissioners, 954 F.3d 981, 988 (7th Cir. 2020) ("Whether Title II applies to law enforcement investigations and arrest, and if so to what extent, is an open question in this circuit."); Clark v. Colbert, 895 F.3d 1258, 1265-1266 (10th Cir. 2018) ("[W]e have never squarely held the ADA applies to arrests. Likewise, we have never held a municipality incurs liability under the ADA for failing to adequately train its employees." (citations omitted)). In Roell, the plaintiff suffered from mental illness and police officers were

---

[1] But see, Wilson v. City of Southlake, 936 F.3d 326, 331 (5th Cir. 2019) (finding that the "Hainze exception" does not apply to a situation where a child with a disability is involved and there "was no potentially life-threatening situation or threat to human life").

Page **5** of **11**

called by a neighbor whose window he broke and whom he threatened. 870 F.3d at 476. When police officers arrived, plaintiff, armed with a hose and garden basket, charged (or briskly walked toward) the officers; and, after a warning and physical struggle, the officers deployed a Taser multiple times and eventually subdued the plaintiff. After the struggle and tasing, plaintiff stopped breathing and was subsequently pronounced dead. Id. 479. In resolving plaintiff's failure-to-accommodate ADA claim, the Court stated that there was no liability because the officers "faced exigent circumstances" that made the accommodations that plaintiff advocated "unreasonable" in light of public safety concerns. Id. at 489.

In Ingram v. Kubik, 30 F.4th 1241 (11th Cir. 2022), the Eleventh Circuit also side-stepped the question. In doing so, the Court found that the argument that "Title II does not apply to police encounters," "may conflict with precedent." Id. at 1257. That precedent being Bircoll v. Miami-Date Cnty, 480 F.3d 1072, 1084-1084 (11th Cir. 2007), in which the Court, while declining to address "whether police conduct during an arrest is a program, service, or activity covered by the ADA," nonetheless found that an arrestee can state a claim of discrimination under the ADA. The Ingram Court addressed the claim of a plaintiff, suffering from PTSD, who was "calm and posed no threat" to police officers but who was nonetheless "suddenly body slammed" by the officers who were performing a welfare check (plaintiff was reported to be suicidal). 30 F.4th at 1247. In affirming the district court's dismissal of a Title II discrimination claim, the Court found that "vicarious liability is unavailable under Title II: and that a plaintiff must instead show, at a minimum, that an official with authority to address the discrimination had knowledge of the discrimination, took no corrective action, and was deliberately indifferent. Id. at 1259.

Other Circuits have addressed the issue and found that at least some if not all police activity prior to arrest is covered by ADA/RA. Accordingly, in Haberle v. Troxell, 885 F.3d 170 (3rd Cir.

2018) the Third Circuit found that "[a]s a threshold matter, we consider whether the ADA applies when police officers make an arrest. Although the question is debatable, we think the answer is generally yes." Id. at 178-179. The Court declined to address whether pre-arrest police activity is "a program, service, or activity," but found that the ADA also concerns persons "subjected to discrimination" in all scenarios of contact between a disabled person and a public entity regardless of context. Id. at 180. Thus, "[i]t follows, then, that police officers may violate the ADA when making an arrest by failing to provide reasonable accommodations for a qualified arrestee's disability, thus subjecting him to discrimination. Given that catchall, we believe the ADA can indeed apply to police conduct during an arrest." Id.; accord Ivchenko v. City of Scottsdale, 2021 WL 4739642, *1 (9th Cir. 2021) (stating that an arrestee can assert two types of ADA claims: one in which she was wrongly arrested because of a misperception of disability related behavior; and two, in which police officers "fail to reasonably accommodate the person's disability in the course of an investigation or arrest . . . "); Seremeth v. Board of County Com'rs Frederick County, 673 F.3d 333, 336-337 (4th Cir. 2012) ("We hold that while police investigations are subject to the ADA's framework, the exigent circumstances involved in a suspected domestic violence situation render the accommodations provided reasonable under the ADA.").

In almost all of the cases cited above, the Circuit Courts' considered the ADA/RA claims at the summary judgment stage with a full record.

In this Circuit, a police department is considered a "public entity" such that their actions must be consistent with the ADA and RA. Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998). Therefore, the only question before the Court is whether Plaintiff can proceed on claims that L.H. was entitled to accommodation and freedom from discrimination pursuant to the ADA and RA prior to his arrest/detention. Certainly, in this Circuit, the ADA and RA apply to *post-arrest*

activities of the police. Gorman, 152 F.3d at 912 (the ADA applies to transportation after arrest); Folkerts v. City of Waverly, Iowa, 707 F.3d 975, 983 (8th Cir. 2013) ("Title II of the ADA applies to an arrestee's post-Miranda interview."); Bahl v. County of Ramsey, 695 F.3d 778 (8th Cir. 2012) (similar). However, the Eighth Circuit has left open the question of whether the ADA and RA apply to pre-arrest conduct. Bahl, 695 F.3d at 784-785 ("We need not decide whether the act of a law enforcement officer effecting a traffic stop is a covered service.").

The Eighth Circuit has not explicitly found that a plaintiff is legally foreclosed from pursuing discrimination and/or failure to accommodate claims as alleged by Plaintiff. As such, Plaintiff may pursue her claims in this Court. See De Boise v. Taser Intern., Inc., 760 F.3d 892, 898-899 (8th Cir. 2014) (assuming without analysis that the plaintiff could pursue an ADA claim based on pre-arrest police activity but stating that there was no ADA violation because "unexpected and rapidly evolving circumstances" did not mandate consideration of accommodations). To the extent that Defendant may argue that the circumstances of this case did not require any accommodation, such arguments are best suited for summary judgment or trial. That is, whether the encounter between L.H. and Deputy Cooper involved exigent circumstances or other circumstances that rendered any accommodation unreasonable or ill-advised will be based on the facts as discovered.[2]

Defendant next argues that Plaintiff is required to prove that the County was deliberately indifferent to his rights (as opposed to just Defendant Cooper or other employees on a vicarious liability theory) and that the Amended Complaint merely offers conclusory allegations of the same.

---

[2] The Court is mindful that Plaintiff alleges the L.H. was having a schizophrenic episode, that he had injured his sister, that he was threatening self-harm or suicide, that he initially did not comply with the officer's directions, and that he kept his hands at his side – all of which may demonstrate that the scene was not "secure" and that there was a possibility of harm to a person. However, the Plaintiff also alleges that L.H. was a minor at the time, that he had no weapons, that there were no weapons in the house, that he was not (at least affirmatively) resisting arrest, that he was not combative, aggressive or violent, and that he posed no threat to the officers.

See Ingram, 30 F.4th at 1259; Jones v. City of Detroit, 20 F.4th 1117 (6th Cir. 2021). In Roberts v. City of Omaha, 723 F.3d 966 (8th Cir. 2013), the Eighth Circuit addressed a claim that police officers violated the plaintiff's ADA and RA rights during an arrest. In addressing the claim, the Court found that the police officers were entitled to qualified immunity on both a failure to accommodate claim and a claim that the officers misperceived disability related conduct as criminal conduct. Id. 973-975. By implication, the Circuit Court appeared to approve vicarious liability: that a public entity (in the case, the City of Omaha) could be liable under the ADA for the deliberately indifferent acts of its officers. 42 U.S.C. § 1983. Id. 975-976. The Court went on to find, however, that the plaintiff could only prevail on his failure to train ADA/RA claims against the city by showing the city's deliberate indifference – which plaintiff could not prove because he could not show that the city had notice of the discriminatory conduct. Id. 976.

This finding that notice was required to hold a municipality liable under Title II is the same theory that underscores the findings by the Eleventh Circuit in Ingram and the Sixth Circuit in Jones, which both, in turn, rely on the Supreme Court's finding in Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998). In that case, the Supreme Court held that vicarious liability was not available under Title IX of the Education Amendments of 1974, thus the school district was not vicariously liable for a teacher's misconduct. Id. 292-283. In Jones, the Sixth Circuit concluded that the remedial regime of Title II of the ADA did not allow for vicarious liability because it is based on Title VI of the Civil Rights Act of 1964 which in turn is based on Title IX.[3]

---

[3] A brief dive into statutory language reveals that Title II of the ADA relies on Section 505 of the RA. 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [Section 505] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation" of Title II.). Section 505 in turn relies on Title VI of the Civil Rights Act of 1964. 29 U.S.C. § 794a(a)(2). Thus, remedies for a violation of Title II of the ADA and Section 504 of the RA "are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964 . . . ." Barnes v. Gorman, 536 U.S. 181, 184-185 (2002). The Barnes Court went on to approve a holding in Gebser that "a damages remedy will not lie under Title

Plaintiff nonetheless offers a menagerie of arguments as to why the above precedents do not apply. After considering those arguments, the Court find that the Eighth Circuit would follow the Eleventh and Sixth Circuit Courts and hold that vicarious liability is not available in Title II cases. Plaintiff acknowledges that "[t]he Eighth Circuit has held that ADA and RA claims are modeled on Title VI, and therefore should be governed by Title VI precedent." (Doc. 44, p. 11). She goes on to state that "Meagley [v. City of Little Rock, 639 F.3d 384 (8th Cir. 2011)] . . . squarely permits claims under Title [II] of the ADA and the RA against entities for their deliberate indifference through the vicarious liability of City representatives." (Doc. 44, pp. 11-12). This mischaracterizes the holding in Meagley. In that case, the Eighth Circuit did not mention vicarious liability. Rather, the Court held that the plaintiff "must show that the City of Little Rock was deliberately indifferent to the rights secured" by the ADA and RA to recover compensatory damages and that the plaintiff "failed to satisfy this standard" but failing to produce evidence that the City had knowledge that it was out of compliance with the ADA. Meagley, 639 F.3d 389. Accordingly, Plaintiff must plead and ultimately prove that Jefferson County (through an appropriate official) had knowledge of violations of the ADA and RA and was deliberately indifferent to Plaintiff's rights.

Perhaps recognizing this conclusion, Plaintiff argues that she has set forth sufficient allegations. In the Amended Complaint, she alleges that prior to arriving on the scene Deputy Cooper joked about the call to other deputies and a supervisor after gaining knowledge that L.H. was disabled (Doc. 39, pp. 7, 26). Plaintiff implies, but does not allege, that these text messages demonstrate Deputy Cooper's "anticipated conduct" in presumably violating L.H.'s disability

---

IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." Gebser, 524 U.S. at 290; Barnes, 536 U.S. at 186.

rights.  Plaintiff further alleges that Sheriff Marshak suggested to Plaintiff in a letter that it was inappropriate for law enforcement personnel, who may use force, to encounter non-criminals experiencing a mental health crisis.  And, in any event, Plaintiff argues that Defendants are on notice of the claim against them.  (Doc. 39, p. 15-16).   Plaintiff's allegations are insufficient to state a claim that the County violated the ADA/RA under the circumstances of this case.  Plaintiff has not alleged any factual information that raises her claims beyond the speculative level; that is, there are no allegations that would support a contention that the County had prior notice of any violations or anticipated violations of the ADA/RA and that it was deliberately indifferent to L.H.'s rights.

**IV.**     **Conclusion**

For the foregoing reasons, Defendant Sheriff David Marshak's Motion to Dismiss Counts V-VIII (Doc. 41) is **GRANTED**.  Counts V-VIII are **DISMISSED without prejudice**.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of April, 2024